UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF WESTLAND POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS INTERNATIONAL INC., ANDRÉ CALANTZOPOULOS, MARTIN G. KING, and DANIEL NEWMAN,<br><br>Defendants. | Case No. 1:18-cv-08049-RA |
| GREATER PENNSYLVANIA CARPENTERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS INTERNATIONAL INC., ANDRÉ CALANTZOPOULOS, MARTIN G. KING, and DANIEL NEWMAN,<br><br>Defendants. | Case No. 1:18-cv-08814 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF UNION ASSET MANAGEMENT HOLDING AG FOR:
(1) INTERVENTION PURSUANT TO FED. R. CIV. P. 24; AND
(2) STAY OF PSLRA LEAD PLAINTIFF MOTION DEADLINE**

Union Asset Management Holding AG ("Union") respectfully submits this memorandum of law in support of its motion: (i) pursuant to Fed. R. Civ. P. 24, to intervene in the above-captioned actions *City of Westland Police and Fire Retirement System v. Philip Morris International Inc. et al.*, 1:18-cv-08049-RA (the "Westland Action") and *Greater Pennsylvania Carpenters' Pension Fund v. Philip Morris International Inc. et al.*, 1:18-cv-08814 (the "Greater Pennsylvania Action" and, collectively with the Westland Action, the "S.D.N.Y. Actions"); and (ii) to stay the November 5, 2018 Lead Plaintiff motion deadline in the S.D.N.Y. Actions, imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), pending resolution of Union's motion to intervene and its anticipated motion to transfer the S.D.N.Y. Actions to the U.S. District Court for the District of New Jersey for consolidation with *Rubenstahl v. Philip Morris International Inc. et al.*, 2:17-cv-13504 (the "Rubenstahl Action" and, collectively with the S.D.N.Y. Actions, the "Related Actions"). Plaintiff Greater Pennsylvania Carpenters' Pension Fund has advised Union that it does not oppose this motion.

## PRELIMINARY STATEMENT

On December 21, 2017, the Rubenstahl Action was filed in U.S. District Court for the District of New Jersey, alleging violations of the federal securities laws by Philip Morris International Inc. ("Philip Morris" or the "Company") and certain of its top officers. Specifically, Rubenstahl alleged that, during a class period extending from July 26, 2016 and December 20, 2017, both dates inclusive, Philip Morris and the individual defendants concealed significant irregularities in the clinical experiments that formed the basis for its applications to the U.S. Food and Drug Administration ("FDA") for approval of its iQOS electronic smoking device. *See generally* Rubenstahl Action Dkt. No. 1. Pursuant to the PSLRA, Rubenstahl's counsel issued a press release that same day which advised investors, *inter alia*, of the pendency

1

of the action and their right to seek appointment as Lead Plaintiff on or before February 20, 2018.  *See* Rubenstahl Action Dkt. No. 7-2 at *4.

On February 20, 2018, Union duly filed a motion for appointment as Lead Plaintiff, asserting that it had incurred a loss of more than *$6.4 million* as a result of Philp Morris's alleged malfeasance.  Rubenstahl Action Dkt. No. 7.  That same day, two other putative class members filed competing motions, alleging significantly smaller losses.  Rubenstahl Action Dkt. Nos. 5, 6.  Those competing movants subsequently abandoned their motions, in light of Union's greater financial interest in the litigation within the meaning of the PSLRA.  Rubenstahl Action Dkts. Nos. 9, 10.  The defendants in the Rubenstahl Action likewise have not opposed Union's appointment as Lead Plaintiff.  Accordingly, Union's motion for Lead Plaintiff on behalf of the class described in the Rubenstahl Action is unopposed, making Union in effect the presumptive Lead Plaintiff in that action.  At the time of this submission, Union's motion remains pending before the court in the Rubenstahl Action.

On September 4, 2018—nearly nine months after the filing of the Rubenstahl Action—the Westland Action was filed in U.S. District Court for the Southern District of New York.  Like the Rubenstahl Action, the Westland Action alleges that Philip Morris and its top officers concealed from the investing public significant issues relating to its iQOS product.  Specifically, the Westland Action alleged that the Company's fraud continued after the end of the class period alleged in the Rubenstahl Action, as Philip Morris and its officers concealed the factors impacting iQOS sales in Japan, a key market, between February 8, 2018 and April 18, 2018, both dates inclusive.  *See generally* Westland Action Dkt. No. 1.  Despite concerning the same fraudulent conduct at issue in the Rubenstahl Action, the class period in the Westland Action appears to have been carefully crafted to avoid any overlap with the class period in the

2

Rubenstahl Action.  Counsel for plaintiff in the Westland Action issued a press release announcing the pendency of the Westland Action and informing Philip Morris investors that they had until November 5, 2018 to seek appointment as Lead Plaintiff in the Westland Action (the "S.D.N.Y. PSLRA Notice").  Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A.

Then, on September 26, 2018, the Greater Pennsylvania Action was filed in U.S. District Court for the Southern District of New York.  The Greater Pennsylvania Action correctly alleges that the malfeasance respectively alleged in the Rubenstahl and Westland Actions was all part and parcel of the same overarching fraud—namely, Philip Morris's concealment from investors of the significant challenges that the Company faced in developing, gaining regulatory approval for, marketing, and selling its iQOS products in such key markets as the United States and Japan. *See generally* Greater Pennsylvania Action Dkt. No. 1.  The Greater Pennsylvania Action alleges a Class Period extending from July 26, 2016 through April 18, 2018—*i.e.*, encompassing in their entirety the two class periods respectively alleged in the Rubenstahl and Westland Actions.  *Id.* at ¶ 1.  Under the expanded class period alleged in the Greater Pennsylvania Action, Union has incurred even greater losses than the $6.4 million it lost in connection with its Philip Morris investments during the class period in the Rubenstahl Action.

To protect its interests in full, Union seeks to intervene in the S.D.N.Y. Actions for the purposes of requesting that the Court transfer both actions to the District of New Jersey, ultimately to be consolidated with the Rubenstahl Action.  Union respectfully submits that, as the Greater Pennsylvania Action acknowledges, the allegations in the S.D.N.Y. Actions describe merely a continuation of the same fraudulent conduct alleged in the Rubenstahl Action.  Accordingly, the publication of the S.D.N.Y. PSLRA Notice, advising Philip Morris investors

that they may seek appointment as Lead Plaintiff in that action on or before November 5, 2018—nearly *nine months* after the PSLRA-imposed deadline in the Rubenstahl Action—represents an improper end-run around the requirements of the PSLRA, undermines the Lead Plaintiff order that Union anticipates the court will enter in the Rubenstahl Action, and threatens to cause significant prejudice to the class of investors on whose behalf Union has sought appointment as Lead Plaintiff.

Counsel for the City of Westland Police and Fire Retirement System, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), is fully aware that the filing of the Westland Action and issuance of the Westland PSLRA Notice constituted an improper attempt to game the PSLRA process. In July 2018, two putative class actions were filed against Facebook, Inc. ("Facebook") in the Southern District of New York, alleging violations of the federal securities laws. *See Kacouris v. Facebook, Inc. et al.*, 1:18-cv-06765 (the "Kacouris Action"); *Helms v. Facebook, Inc. et al.*, 1:18-cv-06774 (the "Helms Action"). On August 9, 2018—*less than two months ago*—as Lead Counsel in the already pending action *In re Facebook, Inc. Sec. Litig.,* No. 5:18-cv-01725-EJD (ND. Cal.), Robbins Geller filed a letter in the Kacouris and Helms Actions, stating its intention to intervene for the purposes of transferring both the cases to the Northern District of California for consolidation. (*See* Lieberman Decl., Ex. B.) The letter stated, in relevant part:

> ***This is improper.*** In nearly identical situations, ***courts in this District have repeatedly rejected efforts to restart the lead plaintiff appointment process or maintain separate related actions based on subsequent disclosures of the same fraud.*** Here, the question is not even close: the above-captioned actions are based on disclosures revealing the fraud alleged in the Facebook Securities Litigation and a stock price decline that resulted from the very events that are at issue in the existing case.
>
> Following this precedent is particularly appropriate here given the intent of the PLSRA's lead plaintiff provisions. *See, e.g., In re Bank of Am. Corp. Sec.,*

4

> *Deily.& ERISA Litig.,* 2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011). . . . ***The filing of a new complaint against Facebook on behalf of a different client in a different jurisdiction smacks of gamesmanship, and runs directly contrary to the PSLRA.***
>
> Finally, Mississippi and Amalgamated also intend to ask this Court to transfer [the S.D.N.Y. Facebook actions] to the Northern District of California—the District where the Facebook Securities Litigation is pending . . . . ***Transfer of these actions is compelled by the PSLRA, and would ensure the action is prosecuted in a coordinated fashion*** and overseen by Judge Davila, who has been presiding over the Facebook Securities Litigation since its inception.

*Id.* (emphases added).

For these same reasons, Union likewise respectfully requests a stay of the PSLRA-imposed Lead Plaintiff motion deadline of November 5, 2018 in the S.D.N.Y. Actions, pending resolution of Union's motion to intervene and anticipated motion to transfer. All three of the Related Actions are properly adjudicated in one consolidated proceeding, with Union as the duly appointed Lead Plaintiff pursuant to the clear dictates of the PSLRA. As explained below, Union satisfies the requirements for intervention as of right and for permissive intervention because its motion is timely, it has a very substantial interest in the outcome of the action, and intervention will not result in undue delay nor will it prejudice the original parties to the action. In addition, a stay of the S.D.N.Y. Actions is warranted pending resolution of Union's motion to intervene because the requested stay, for these limited purposes, will not prejudice the parties, non-parties, the Court, or the public.

## ARGUMENT

### I. LEGAL STANDARDS

#### A. Intervention

Federal Rule of Civil Procedure 24 provides for intervention either as of right or with the permission of the court. A court "must permit anyone to intervene" who, "on timely motion," "claims an interest relating to the property or transaction that is the subject of the action, and is

5

so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *Oneida Indian Nation of N.Y. v. Madison County*, 605 F.3d 149, 161 (2d Cir. 2010); *see also MasterCard Int'l. Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006).

The right to intervene is permissive when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "A district court has broad discretion under Rule 24(b) to determine whether to permit intervention on the basis that the intervenor's claim or defense and the main action have a question of law or fact in common." *In re Direxion Shares EFT Trust*, 279 F.R.D. 221, 234 (S.D.N.Y. 2012) (quoting *St. John's Univ. v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011)). Courts typically consider the same four factors whether a motion for intervention is "of right" under Fed. R. Civ. P. 24(a), or "permissive" under Fed. R. Civ. P. 24(b). *Id.* (citing *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.,* 467 F.3d 238, 240 (2d Cir. 2006)).

### B. Stay of Proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id*. at 254-255. This power is therefore exercised at the court's discretion. *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986). There are five factors to which the courts in the Second Circuit look in considering whether to grant a stay: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against

6

the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Volmar Distribution v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id*.

## II.  INTERVENTION AS A MATTER OF RIGHT UNDER RULE 24(a) IS WARRANTED

Under Rule 24(a)(2), a court "must permit anyone to intervene" who satisfies the Rule's requirements. That standard is met where "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 66 (2d Cir. 2016). Union meets all of the criteria for intervention as of right.

### A.  Union's Motion to Intervene is Timely

The concept of "[t]imeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the [movant] had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the [movant] if the motion is denied; and (4) any unusual circumstances mitigating for or against a finding of timeliness." *Pitney Bowes*, 25 F.3d at 70.

The Westland Action was filed on September 4, 2018. (Westland Action Dkt. No. 1.) The Greater Pennsylvania Action, the allegations of which acknowledged that the subject matter of the S.D.N.Y. Actions and the Rubenstahl Action all comprised the same fraudulent conduct by

7

Philip Morris during one overarching class period, was filed on September 26, 2018—less than two weeks prior to Union's instant motion.  Moreover, Union has filed its motion roughly one month before the purported November 5, 2018 Lead Plaintiff deadline that was improperly published in the S.D.N.Y. PSLRA Notice.  Given these dates, it is clear that Union promptly moved to intervene upon recognizing its own interest in the S.D.N.Y. Actions.

Union's intervention will not result in undue delay, nor will there be prejudice to the parties in the S.D.N.Y. Actions.  These actions, the most recent of which was filed less than two weeks ago, remain in their nascent stages.  Assuming *arguendo* that the S.D.N.Y. PSLRA Notice properly set forth an operative Lead Plaintiff deadline, that purported deadline is set for November 5, 2018.  Accordingly, any would-be lead plaintiff movants in the S.D.N.Y. Actions have yet to undertake the time and expense associated with motion practice or amended pleadings.  As actions governed by the PSLRA, the S.D.N.Y. Actions are subject to a mandatory stay of discovery pending resolution of any motion(s) to dismiss, 15 U.S.C. §78u-4(a)(3)(B)(iv), and accordingly the parties have yet to incur any time and expense in connection with discovery either.

Indeed, granting Union's motion in order to ultimately effect transfer of the S.D.N.Y. Actions to the District of New Jersey for consolidation with the Rubenstahl Action would in fact *avoid* potential prejudice to the parties.  First, Union's motion would avoid prejudice to members of the putative class who might otherwise file Lead Plaintiff motions on November 5, 2018, by preventing them from undertaking motion practice that Union respectfully submits is improper and ultimately meaningless due to the pendency of the Rubenstahl Action.  Second, Union's motion would avoid prejudice to the Defendants, who would otherwise be forced to defend at least two different actions arising from the same alleged misconduct, in two different

8

jurisdictions. *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 372 (S.D.N.Y. 2013) ("the risk of hardship to [defendant] of engaging in duplicative motion practice and discovery proceedings outweighs any prejudice that could potentially inure to [plaintiff]"); *Maritima De Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, 10 Civ. 8134 (DLC), 2011 U.S. Dist. LEXIS 41148, at *16-17 (S.D.N.Y. Apr. 15, 2011) (duplicative litigation prejudicial to both parties); *Finn v. Barney*, 08 Civ. 2975 (LTS)(KNF), 2008 U.S. Dist. LEXIS 101509, at *8 (S.D.N.Y. Dec. 8., 2008) (duplicative discovery burdens prejudicial).

By contrast, if intervention is denied, Union would be severely prejudiced by the filing and adjudication of PSLRA Lead Plaintiff motions in the S.D.N.Y. Actions. Union, having incurred more than ***$6.4 million*** in losses in connection with Philip Morris's fraudulent conduct, and even larger losses in the longer class period alleged in the Greater Pennsylvania Action, has an unopposed motion for appointment as Lead Plaintiff pending in the Rubenstahl Action. If (presumably, *when*) that motion is granted, in order to fully protect the interests of Philip Morris investors who were injured as a result of the Company's alleged fraud, Union intends to file an amended complaint, alleging an expanded class period extending at least from July 26, 2016 through April 18, 2018—the same class period currently at issue in the S.D.N.Y. Actions. Indeed, the court in the Rubenstahl Action has already entered an order to the effect that the Lead Plaintiff (presumptively, Union) will file such a complaint within 60 days of appointment as Lead Plaintiff. (Rubenstahl Action Dkt. No. 17.) Given the significant overlap between the class periods alleged in the S.D.N.Y. Actions and that alleged in the Rubenstahl Action, and the *complete* overlap between the class periods alleged in the S.D.N.Y. Actions and the class period that Union would allege as Lead Plaintiff in the Rubenstahl Action, appointing a Lead Plaintiff in the S.D.N.Y. Action would in effect needlessly bifurcate the fraud claims against Philip Morris

9

into two competing actions, thereby prejudicing Union's ability to represent in full the interest of the Philip Morris investors on whose behalf it anticipates appointment as class representative and, ultimately, to vigorously prosecute one consolidated class action encompassing one class period.

Recognizing the prejudice to Lead Plaintiffs duly appointed pursuant to the PSLRA, as well as disruption to the orderly Lead Plaintiff process established by the PSLRA, courts in this Judicial District routinely reject efforts to "restart" the Lead Plaintiff appointment process by the filing of new complaints alleging nearly identical claims against the same defendants. *See*, *e.g.*, *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 09 MDL 2058 (DC), 2010 U.S. Dist. LEXIS 37799, at *6-*7 (S.D.N.Y. Apr. 9, 2018) ("Permitting other plaintiffs to bring additional class actions now . . . would interfere with Lead Plaintiff's ability and authority"); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, MDL No. 12-2389, 2013 U.S. Dist. LEXIS 115647, at *11-*12 (S.D.N.Y. Aug. 13, 2013) (rejecting separate class action as rendering "the PSLRA's lead plaintiff provisions meaningless"); *In re UBS AG Sec. Litig.*, 07-cv-11225-RJS, Order, Dkt. No. 97 (S.D.N.Y. Apr. 7, 2009) (rejecting request to maintain separate class action based on new disclosures and consolidating action under leadership of previously appointed lead plaintiff); *In re Lehman Bros. Sec., & ERISA Litig.*, 09-md-02017-LAK, Order, Dkt. No. 86 (S.D.N.Y. Apr. 24, 2009) (rejecting argument to maintain separate action as "singularly unpersuasive"). Again, as discussed *supra*, less than two months ago, Robbins Geller itself made ***precisely*** these arguments in seeking to intervene in actions against Facebook pending in the Southern District of New York in order to defend its client's interests as Lead Plaintiff in another action against Facebook. *See* Lieberman Decl., Ex. B. Following a thorough discussion of the relevant considerations at a hearing on Robbins Geller's contemplated motion, the parties ultimately

agreed that transfer and consolidation were in the best interest of the members of the class, and entered a stipulation to that effect. Kacouris Action Dkt. No. 18. Here, Plaintiff Greater Pennsylvania Carpenters' Pension Fund has already advised Union that it does not oppose this motion.

### B. Union Has a Significant Protectable Interest in the Subject of the S.D.N.Y. Actions

For an interest to be cognizable under Rule 24(a)(2), it must be "direct, substantial, and legally protectable." *Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (citing *Washington Elec. Coop. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). Rule 24(a)(2) does not require a property interest but rather "an interest relating to the property or transaction which is the subject of the action." *Id.* at 130; Fed. R. Civ. P. 24(a)(2).

Union indisputably has a significant financial interest in the subject matter of the S.D.N.Y. Actions. Between July 26, 2016 and December 20, 2017 alone, Union purchased nearly 1.4 million shares of Philip Morris stock and Philip Morris debt securities in the principal amount of $10.7 million, and suffered total losses of more than ***$6.4 million*** as a result of Philip Morris's false and misleading statements concerning its iQOS products. *See* Rubenstahl Action Dkt. No. 7-2 at *16-*17. Moreover, Union incurred even greater losses during the longer class period alleged in the S.D.N.Y. Actions. Financial loss incurred by investors as a results of Philip Morris's false and misleading statements concerning its iQOS products is ***precisely*** the subject of the S.D.N.Y. Actions.

### C. Union's Interest Could Be Impaired by the Disposition of the S.D.N.Y. Actions

The third prong of a Rule 24(a) inquiry merely asks whether an unfavorable disposition of the litigation may impair Union's interests. *See Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87-cv-0675 (SWK), 1990 U.S. Dist. LEXIS 15762 at *13 (S.D.N.Y. Nov. 20, 1990). Union need

11

only demonstrate that it may be "practically harmed" as opposed to showing substantial impairment of its interests. *Id.*

If Union's motion for intervention, with the ultimate goal of transferring the S.D.N.Y. Actions to the District of New Jersey for consolidation with the Rubenstahl Action, is not granted, Union's ability to pursue recovery of its losses, and those other class members, in connection with Philip Morris's fraudulent conduct as alleged in the Related Actions, will be significantly impaired. As the presumptive Lead Plaintiff in the Rubenstahl Action, Union will be uniquely tasked with working closely with the attorneys handling the litigation to vigorously prosecute the action on behalf of the class. If the fraud claims against Philip Morris remain improperly bifurcated into the Rubenstahl Action and the S.D.N.Y. Actions, Union's ability to pursue recovery on behalf of the class will be significantly hindered. *See*, *e.g.*, *Bank of Am. Corp.*, 2010 U.S. Dist. LEXIS 37799, at *6-*7 ("Permitting other plaintiffs to bring additional class actions now . . . would ***interfere with Lead Plaintiffs' ability and authority***") (emphasis added).

### D. Union's Interest is Not Completely Protected by the Parties in the S.D.N.Y. Actions

The last prong of a Rule 24(a) inquiry requires a showing that the representation of a movant's interest "may be" inadequate. *Certified Multi-Media Solutions, Ltd. v. Preferred Contractors. Ins. Co. Risk Retention Grp. LLC,* No. 14-cv-5227 (ADS), 2015 U.S. Dist. LEXIS 129050 at *30 (E.D.N.Y. Sept. 24, 2015) (citing *Sackman v. Liggett Grp.*, 167 F.R.D. 6, 22 (E.D.N.Y. 1996)). The burden of making that showing is "minimal." *Id.* Indeed, adequacy of representation is "a minor factor at most." *Id.* (finding that potentially adequate representation of movant was outweighed by other compelling factors, including and especially the pragmatism of resolving all known claims in a single lawsuit involving all concerned parties, along with

movant establishing that it has a substantial and protectable interest in the subject matter of the action that may well be impaired if it is not permitted to intervene).

Here, for the reasons explained above, it is self-evident that neither the plaintiffs in the S.D.N.Y. Actions nor any Lead Plaintiffs ultimately appointed therein will adequately protect Union's interests. Indeed, as discussed, the very fact of the pendency of the S.D.N.Y. Actions, and the appointment of any Lead Plaintiff therein, are antithetical to Union's interests as the presumptive Lead Plaintiff in the Rubenstahl Action, and absent Union's intervention in the S.D.N.Y. Actions, those interests will not and cannot be protected. This more than satisfies the minimal showing required by Rule 24(a).

### III. IN THE ALTERNATIVE, PERMISSIVE INTERVENTION UNDER RULE 24(b) IS WARRANTED

Alternatively, under Rule 24(b)(1)(B), "on timely motion," the court may permit intervention where the movant "has a claim or defense that shares with the main action a common question of law or fact." *In re Bear Stearns Cos.*, 297 F.R.D. 90, 97 (S.D.N.Y. 2013). Courts typically consider the factors set forth in Rule 24(a) in deciding a motion for permissive intervention. *See Direxion*, 279 F.R.D. at 234. However, the "principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes*, 25 F.3d at 73 (quoting Fed. R. Civ. P. 24(b)(2)).

Union's claims are essentially identical to those in the complaints in the S.D.N.Y. Actions, which share common questions of law and fact with the Rubenstahl Action. These include *inter alia*: (1) whether the defendants in these actions violated the Exchange Act; (2) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Philip Morris; and (3) whether

13

the trading price of Philip Morris's securities was artificially inflated. *See*, *e.g.*, Rubenstahl Action, Dkt. No. 1 at ¶ 33; Westland Action, Dkt. No. 1 at ¶ 52; Greater Pennsylvania Action, Dkt. No. 1 at ¶ 73.

As discussed *supra* at section II.A., Union's motion to intervene is timely under Rule 24(a), and thus, it is timely under Rule 24(b)(1)(B). *See In re Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d 415, 418 (S.D.N.Y. 2007) (analyzing timeliness under Rule 24(a) and Rule 24(b)(1)(B) by the same factors). Most significantly, Union's intervention will not result in undue delay or prejudice to the original parties. The S.D.N.Y. Actions are in their early stages. Indeed, by granting Union's motion for intervention and staying the purported Lead Plaintiff deadline of November 5, 2018, in order to permit Union to seek transfer of these actions to the District of New Jersey for consolidation with the Rubenstahl Action, the Court will obviate the need for a duplicative and improper lead plaintiff motion process, thus sparing potential litigants significant, ultimately fruitless work in connection with the filing and briefing of Lead Plaintiff motions.

If intervention is denied, however, Union will be prejudiced for the reasons set forth at length *supra* at Section II.C.—namely, its "ability and authority" to act as Lead Plaintiff for the class in the Rubenstahl Action will be significantly compromised, to the detriment of Union and all members of the investor class. *Bank of Am. Corp.*, 2010 U.S. Dist. LEXIS 37799, at *6-*7.

### IV.  A STAY OF THE LEAD PLAINTIFF DEADLINE IN THE S.D.N.Y. ACTIONS IS WARRANTED PENDING RESOLUTION OF UNION'S MOTION TO INTERVENE

In determining whether to grant a stay, courts in the Second Circuit consider the following five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of

14

persons not parties to the civil litigation; and (5) the public interest. *Volmar Distribution*, 152 F.R.D. at 39. Here, Union respectfully submits that on balance, the foregoing factors weigh heavily in favor of the requested stay.

### A.     The Interests of the Plaintiffs

Granting the requested stay will not unduly prejudice the interests of the plaintiffs in the S.D.N.Y. Actions in proceeding expeditiously with this litigation. As discussed, the S.D.N.Y. Actions are governed by the PSLRA. As such, assuming *arguendo* that the S.D.N.Y. Actions continue to proceed separately from the Rubenstahl Action, the cases would in any event not meaningfully proceed until after the Court has adjudicated competing Lead Plaintiff motions— currently due on November 5, 2018—and appointed a Lead Plaintiff. Accordingly, there is no guarantee that either of the plaintiffs in the two S.D.N.Y. Actions will ultimately have responsibility for prosecuting these cases. Moreover, it is customary in PSLRA actions that the Lead Plaintiff be granted an interval of time following appointment to prepare and file a consolidated amended complaint. *See*, *e.g.*, Manual for Complex Litigation § 31.4 (4th Ed. 2004) ("Immediately after assignment of the litigation, the judge should consider entering an order suspending the time for all defendants to respond to the complaint in cases where a motion to consolidate is pending or a lead plaintiff has not been selected, as the initial complaint is likely to be amended."). In addition, the PSLRA imposes a mandatory stay of discovery pending resolution of any motion to dismiss. 15 U.S.C. §78u-4(a)(3)(B)(iv). *See also In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 938 (S.D. Tex. 2006) (granting stay in PSLRA action, finding no prejudice in light of already existing PSLRA discovery stay). For the foregoing reasons, among others, the S.D.N.Y. Actions remain in their earliest stages, and Union respectfully submits that staying the S.D.N.Y. Actions pending resolution of its motion to

15

intervene and, if granted, its contemplated motion to transfer, will not have a meaningful impact on the duration of this litigation.

Failing to stay the November 5, 2018 Lead Plaintiff motion deadline in the S.D.N.Y. Actions will in fact prejudice the interests of all the named plaintiffs in the Related Actions, as well as the absent class members. Unless and until the S.D.N.Y. Actions are transferred to the District of New Jersey and consolidated with the Rubenstahl Action, none of the Related Actions will be able to proceed in a meaningful, organized, and expeditious manner, to the prejudice of all named plaintiffs and class members.

### B. The Interests of the Defendants

Likewise, granting the requested stay will not prejudice the interests of the defendants. For all of the reasons discussed *supra*, granting the requested stay for the limited purpose sought will ultimately have minimal impact on the overall duration of this litigation. Nor is Union aware of any other reason why granting the stay might prejudice defendants. On the contrary, granting the stay in order to determine whether the S.D.N.Y. Actions should be transferred to the District of New Jersey is likely to ultimately ***benefit*** defendants, by potentially obviating their need to defend duplicative lawsuits in different jurisdictions. *Royal Park Invs.*, 941 F. Supp. 2d at 372 ("the risk of hardship to [defendant] of engaging in duplicative motion practice and discovery proceedings outweighs any prejudice that could potentially inure to [plaintiff]"); *Maritima De Ecologia*, 2011 U.S. Dist. LEXIS 41148, at *16-17 (duplicative litigation prejudicial to both parties); *Finn*, 2008 U.S. Dist. LEXIS 101509, at *8 (finding duplicative discovery burdens to be prejudicial).

### C.     The Interests of the Courts

Granting the requested stay will not prejudice the Court, nor any other federal courts. Again, Union seeks to stay these proceedings only for a limited time—*i.e.*, during the pendency of its motion to intervene and, if granted, its contemplated motion to transfer the S.D.N.Y. Actions to the District of New Jersey for consolidation with the Rubenstahl Action—which will ultimately have little impact on the overall duration of these litigations, and thus little impact on the Court's efficient disposition of the S.D.N.Y. Actions "with economy of time and effort for itself". *Landis*, 299 U.S. at 254.  Considering the purposes for which the stay is sought, Union respectfully submits that such a minimal delay in these proceedings will ultimately yield significant benefits with respect to judicial efficiency, by providing the opportunity for the ultimate adjudication of the Related Actions in one consolidated action, rather than piecemeal in two jurisdictions.  *See Finn*, 2008 U.S. Dist. LEXIS 101509, at *8 ("Denial of the stay application would essentially require the Court to maintain duplicative proceedings, each having a different schedule and potentially doubling the amount of time and energy the Court must expend on these issues.").

### D.     The Interests of Non-Parties

Granting the requested stay will not prejudice non-parties to this litigation.  The non-parties with the greatest interest in the S.D.N.Y. Actions are absent members of the putative class—*i.e.*, investors who purchased Philip Morris securities between July 26, 2016 through April 18, 2018.  Granting the requested stay will not prejudice those investors, but rather provide an opportunity to clarify potential confusion to those investors, created by the filing of the Westland Action and the publication of the Westland PSLRA Notice, which improperly advised investors in Philip Morris securities that they have until November 5, 2018 to seek appointment

as Lead Plaintiff in the S.D.N.Y. Actions (*see* Lieberman Decl., Ex. A.)—notwithstanding the fact that the deadline to seek appointment in the Rubenstahl Action elapsed on February 20, 2018. Rubenstahl Action Dkt. No. 7-2 at *4. Staying this purported deadline in order to determine whether the S.D.N.Y. Actions should be properly transferred to the District of New Jersey for consolidation with the Rubenstahl Action will prevent Philip Morris investors from unnecessarily undertaking the time and expense of retaining counsel and seeking appointment as Lead Plaintiff in the S.D.N.Y. Actions if those actions are subsequently transferred and consolidated with the Rubenstahl Action. By contrast, should the Court decline to grant the requested stay and opt instead to adjudicate Union's motion to intervene and contemplated motion to transfer *after* the November 5, 2018 Lead Plaintiff deadline, it is likely that one or more Philip Morris investors not presently before the Court will file motions seeking Lead Plaintiff appointment, only for those motions to be rendered legal nullities should the S.D.N.Y. Actions ultimately be transferred and consolidated with the Rubenstahl Action.

### E.  The Public Interest

Union respectfully submits that aside from a generalized interest in judicial efficiency, the public interest factor carries no meaningful weight in this analysis. The S.D.N.Y. Actions are *private* securities class actions, governed by the PSLRA, against Philip Morris and certain of its officers, and a stay of the S.D.N.Y. Actions does not meaningfully implicate any apparent public interest considerations.

### CONCLUSION

For the foregoing reasons, Union respectfully requests that the Court: (i) grant its motion to intervene in the S.D.N.Y. Actions; and (ii) enter an order staying the November 5, 2018 Lead Plaintiff motion deadline in the S.D.N.Y. Actions pending resolution of Union's motion to intervene and anticipated motion to transfer the S.D.N.Y. Actions to the District of New Jersey.

Dated: October 6, 2018                         Respectfully submitted,

                                                    POMERANTZ LLP

                                                   */s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Emma Gilmore
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: ahood@pomlaw.com
Email: egilmore@pomlaw.com
Email: jalieberman@pomlaw.com

POMERANTZ LLP
Jennifer Pafiti
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Counsel for Intervenor
Union Asset Management Holding AG*

19